MYERS, Appellee,

v.

MYERS, Appellant.

[Cite as *Myers v. Myers,* 153 Ohio App.3d 243, 2003-Ohio-3552.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

Nos. 2001 CO 67 and 2002 CO 35.

Decided June 30, 2003.

Aronson, Fineman & Davis Co., L.P.A., and Troy D. Barnett, for appellee.

Brian J. Macala, for appellant.

WAITE, Presiding Judge.

{¶ 1} This case presents two separate appeals arising out of a child custody dispute, a shared parenting agreement, and an agreed judgment entry of divorce. In case No. 2001 CO 67, appellant, Patricia L. Myers ("Mother"), asserts that the trial court incorrectly denied her Civ.R. 60(B) motion for relief from an agreed divorce decree. In case No. 2002 CO 35, Mother asserts that there was no change in circumstances sufficient to designate appellee, Robert Myers ("Fa-

ther"), as the sole residential parent of their only child. We affirm in full the trial court judgment in case No. 2002 CO 35 and affirm the result, but not the reasoning, of the trial court in case No. 2001 CO 67.

{¶ 2} The parties were married on August 10, 1996. During the marriage, Mother gave birth to Brooke L. Myers.

{¶ 3} On May 11, 1999, Father filed a complaint for divorce in Columbiana County Court of Common Pleas. In the complaint, Father stated that "one (1) child has been born as issue of said marriage, namely Brooke L. Myers, dob February 25, 1998[.]"

{¶ 4} On May 17, 1999, the court filed temporary orders during the pendency of the divorce. The court granted Mother custody of the child and ordered Father to pay $50 per month in child support.

{¶ 5} On November 18, 1999, Father filed a motion for shared parenting. The motion declared that one child was born as issue of the marriage.

{¶ 6} On January 25, 2000, both Mother and Father signed a health insurance disclosure affidavit in which they acknowledged that Brooke was the daughter of Father. On the same day, Mother also signed a child-support-computation worksheet, which indicated that Father owed $247.75 per month in child support.

{¶ 7} On January 27, 2000, the parties entered into an agreed judgment entry of divorce. The divorce decree stated that "ONE (1) child has been born as issue of said marriage, namely BROOKE L. MYERS * * *." The divorce decree also required Father to pay child support of $252.71 per month.

{¶ 8} As part of the divorce decree, the parties entered into a shared-parenting plan in which both parties were allocated parental rights and responsibilities. Primary parental rights alternated with whichever parent had physical custody of Brooke.

{¶ 9} On November 28, 2000, the parties entered into an agreed modification of the shared-parenting agreement. Father was granted seven consecutive days of parenting rights out of every 28 days, corresponding to his work and time off schedule. Except for a few other minor changes, the remainder of the original shared-parenting agreement remained intact.

{¶ 10} On May 8, 2001, Father filed a motion to become the sole residential parent of Brooke.

{¶ 11} On May 15, 2001, Mother filed a Civ.R. 60(B) motion for relief from judgment. It is clear from the motion that Mother was seeking relief from the divorce decree. Mother's reason for requesting relief was that she was not represented by counsel at the time she executed the divorce decree. Specifically, she sought to have overturned the section of the divorce decree that acknowl-

edged that Brooke was born of the marriage. The sole support raised by Mother in seeking relief from judgment was R.C. 3119.961(A), which states:

{¶ 12} "Notwithstanding the provisions to the contrary in civil rule 60(B) and in accordance with this section, a person may file a motion for relief from a final judgment, court order, or administrative determination or order that determines that the person or a male minor referred to in division (B) of section 3109.19 of the Revised Code is the father of a child or from a child support order under which the person or male minor is the obligor."

{¶ 13} The R.C. 3119.961/Civ.R. 60(B) motion was apparently heard before a magistrate on July 6, 2001, although the transcript of that hearing is not part of the record on appeal.

{¶ 14} On July 19, 2001, the magistrate issued a decision. The magistrate found that Mother was attempting to set aside a paternity decision pursuant to R.C. 3119.961(A). The magistrate concluded that the right of relief from judgment contained in R.C. 3119.961 could only be exercised by the alleged father. The magistrate therefore denied Mother's motion because she was not the father. Mother filed timely objections to the decision on August 2, 2001.

{¶ 15} A hearing on the objections took place on November 26, 2001.

{¶ 16} On December 11, 2001, the court ruled on Mother's objections. The court held that the mother of a child does not have standing to seek relief from judgment pursuant to R.C. 3113.2111(A)(1), which is a prior version of R.C. 3119.961. The statute was renumbered, effective February 22, 2001, and it is the later version which applies to this case. The court overruled Mother's objections and affirmed the magistrate's decision.

{¶ 17} Mother filed an appeal of the judge's decision on December 21, 2001. This appeal was designated as case No. 2001 CO 67.

{¶ 18} On December 27, 2001, the magistrate conducted a hearing on Father's motion to be designated the sole residential parent.

{¶ 19} The magistrate filed its decision on January 14, 2002. The magistrate found that a change of circumstances had occurred subsequent to the most recent modification of the shared-parenting agreement. The magistrate found that Mother had voluntarily entered into a master/slave sexual relationship with a man in Cincinnati and that the relationship had rapidly declined. The court found that Mother was whipped, tied up and left in the dark, and subjected to sexual activity that caused her to scream, cry, and beg for help. The magistrate found that Father went to Cincinnati to remove Mother and Brooke from the intolerable situation and that Father became the primary care provider for Brooke from February 1, 2001, until April 7, 2001.

{¶ 20} The court found that Mother changed her residence five times since January 27, 2000, and that in two of those moves, she refused to give Father her change-of-address information.

{¶ 21} The court found that Mother had various men residing with her after the divorce. The court found that Mother asked Father to care for Brooke so that she could spend time with a male friend at a local motel. The court found that Mother had a history of using pornography and internet sex chat rooms.

{¶ 22} The court held that there had been a change in circumstances in the shared-parenting agreement, and that it was in the best interest of the child to designate Father as the residential parent. Mother was given standard visitation rights pursuant to Local Rule 9.4. The court vacated the child-support order issued on January 27, 2000. The court postponed ruling on all issues involving child support, dependency exemption, health insurance coverage, and uninsured medical expenses.

{¶ 23} Mother filed objections to the magistrate's decision on January 28, 2002. Mother argued that the magistrate's decision was overbroad in that it essentially terminated the parties' shared-parenting agreement. Mother argued that the court was required to make specific findings explaining why the shared-parenting agreement was terminated or that the court should have maintained the same companionship schedule that was contained in the shared-parenting agreement. Mother also argued that the evidence did not support that a change in circumstances had occurred to justify changing the shared-parenting agreement.

{¶ 24} The objections were apparently heard before the court on May 10, 2002, but no transcript of that hearing is in the record.

{¶ 25} The court issued its opinion on May 31, 2002. The court held that the magistrate's decision effectively terminated the shared-parenting agreement. The court held that it had the power to terminate the shared-parenting agreement even though Father did not expressly seek termination of the agreement in his motion. The court also held that there was a change in circumstances and that the designation of Father as the residential parent was in the child's best interest.

{¶ 26} Mother filed a timely appeal of this second decision on June 27, 2002.

{¶ 27} Mother's first assignment of error involves case No. 2002 CO 35, challenging the May 31, 2002 judgment entry. The assignment of error states:

{¶ 28} "Appellee–Father failed to meet his burden of showing a 'change in circumstances' [sic] as required by O.R.C. § 3109.04(E)(1)(a) and thus, the sustaining of appellee-Father's motion to modify residential placement by the court was in error as the sustaining of this motion was an abuse of discretion by the court, against the manifest weight of the evidence and contrary to law."

{¶ 29} Mother correctly acknowledges that a trial court decision in a domestic relations case is reviewed for abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 30} Mother argues that a shared-parenting agreement may not be modified unless the court specifically finds that there has been a change in circumstances as mandated by R.C. 3109.04(E). Strangely, Mother supports her argument by citing R.C. 3109.04(E)(2)(b). This statute does not require the court to find a change in circumstances prior to modifying or terminating a shared-parenting agreement:

{¶ 31} "(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children." R.C. 3109.04(E)(2)(b).

{¶ 32} Mother's premise in her first assignment of error is faulty because the trial court was not required to find a change of circumstances before modifying or terminating the shared-parenting agreement:

{¶ 33} "[A] court may terminate or modify a prior shared-parenting decree if it determines that termination or modification of the shared-parenting plan is in the best interest of the child. According to the statute, this determination may be made without a preliminary determination into whether there was a change in circumstances of the child, his residential parent, or either of the parents subject to the shared-parenting decree. See R.C. 3109.04(E)(2)(b) and (c)." *Patton v. Patton* (2001), 141 Ohio App.3d 691, 695, 753 N.E.2d 225.

{¶ 34} Although R.C. 3109.04(E)(1) requires a finding of a change in circumstances before allowing a court to modify a prior custody decree, R.C. 3109.04(E)(2) provides a number of independent bases for modifying or terminating a shared-parenting agreement that do not require a finding of change in circumstances. R.C. 3109.04(E)(2) states:

{¶ 35} "(2) In addition to a modification authorized under division (E)(1) of this section:

{¶ 36} "(a) Both parents under a shared parenting decree jointly may modify the terms of the plan for shared parenting approved by the court and incorporat-

ed by it into the shared parenting decree. Modifications under this division may be made at any time. The modifications to the plan shall be filed jointly by both parents with the court, and the court shall include them in the plan, unless they are not in the best interest of the children. If the modifications are not in the best interests of the children, the court, in its discretion, may reject the modifications or make modifications to the proposed modifications or the plan that are in the best interest of the children. Modifications jointly submitted by both parents under a shared parenting decree shall be effective, either as originally filed or as modified by the court, upon their inclusion by the court in the plan. Modifications to the plan made by the court shall be effective upon their inclusion by the court in the plan.

{¶ 37} "(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 38} "(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

{¶ 39} "(d) Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made."

{¶ 40} It is clear under these provisions that a shared-parenting agreement is treated differently than a custody decree arising out of adversarial litigation. The court or either parent may invoke the provisions of R.C. 3109.04(E)(2)

whenever the best interest of the child requires a modification or termination of the agreement. The trial court interpreted Father's request to be the sole residential parent as a request to terminate the shared-parenting agreement under R.C. 3109.04(E)(2). Therefore, under R.C. 3109.04(E)(2), the trial court was required to find only that terminating the shared-parenting agreement was in the best interests of the child. Any findings concerning a change in circumstances were superfluous and do not constitute prejudicial error. See., e.g., *Hanson v. Kynast* (1987), 38 Ohio App.3d 58, 60, 526 N.E.2d 327. Any comments that the trial court made in its judgment entry relative to a change in circumstances were, in essence, dicta.

{¶ 41} Even if the trial court were required to find a change in circumstances, there was overwhelming evidence of a change in circumstances in this case. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159, held that "there must be a change of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." Id. at 418, 674 N.E.2d 1159. Davis also held that "a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change [in circumstances] * * *." Id. at 416, 674 N.E.2d 1159.

{¶ 42} Mother's frequent changes of address, her decision to expose her daughter to a sexually charged and possibly dangerous environment, Mother's refusal to let Father know of her whereabouts, and her refusal at times to allow Father to visit or take custody of Brooke, all support the trial court's conclusion that there was a change in circumstances.

{¶ 43} Mother also argues that it was not in Brooke's best interest for Father to become the sole residential parent. In essence, Mother is challenging the trial court's interpretation of the weight of the evidence. A child-custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus.

{¶ 44} While a trial court's discretion in a custody proceeding is broad, it is not absolute, and the trial court must follow the procedure described in R.C. 3109.04 in making its custody decisions. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. R.C. 3109.04(F)(1) sets forth a nonexclusive list of factors that the trial court must consider in evaluating the best interests of the children:

{¶ 45} "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

{¶ 46} "(a) The wishes of the child's parents regarding the child's care;

{¶ 47} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental·rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶ 48} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶ 49} "(d) The child's adjustment to the child's home, school, and community;

{¶ 50} "(e) The mental and physical health of all persons involved in the situation;

{¶ 51} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶ 52} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶ 53} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

{¶ 54} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶ 55} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶ 56} The court noted the following facts in making its decision: Mother's decision to expose Brooke to an abusive master/slave relationship in Cincinnati;

Mother's frequent changes of residence; Brooke's ongoing relationship with her half-sister Brittney (who resided with Mother); the good relationship Brooke had with Father; the stable environment that Father provided; Mother's denial of visitation and companionship rights; and the mental health of all the parties. The court made its decision after clearly considering the factors listed in R.C. 3109.04(F)(1), and the decision is well supported by the record. Mother's first assignment of error is overruled.

{¶ 57} Mother's second assignment of error challenges the trial court's failure to grant the Civ.R. 60(B) motion which would have reopened the paternity issue:

{¶ 58} "The trial court committed reversible error in finding that the appellant-Mother lacked standing to seek relief from judgment pursuant to O.R.C. 3119.961 on the sole basis that she is a female."

{¶ 59} Mother's original claim for relief from the divorce decree (or more specifically, the provision of the divorce decree in which the parties agreed that Brooke was born of the marriage) arose from R.C. 3119.961(A):

{¶ 60} "(A) Notwithstanding the provisions to the contrary in Civil Rule 60(B) and in accordance with this section, *a person may file a motion for relief from a final judgment,* court order, or administrative determination or order *that determines that the person or a male minor referred to in division (B) of section 3109.19 of the Revised Code is the father of a child* or from a child support order under which the person or male minor is the obligor." (Emphasis added.)

{¶ 61} The trial court denied relief under this statute because in his reading of the statute, standing to file a Civ.R. 60(B) motion exists only in the person who is determined to be the father, whereas Mother is Brooke's mother.

{¶ 62} A trial court has broad discretion in granting a motion for relief from judgment under Civ.R. 60(B). *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. The trial court's ruling will not be disturbed on appeal unless it can be shown that the trial court abused its discretion. Id.

{¶ 63} The relevant portion of Civ.R. 60(B) states:

{¶ 64} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

prospective application; or (5) any other reason justifying relief from the judgment."

{¶ 65} The Ohio Supreme Court has held that "[t]o prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) [she] has a meritorious defense or claim to present if relief is granted, (2) [she] is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time * * *." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. R.C. 3119.961 presents a ground for relief that qualifies under the catchall provision of Civ.R. 60(B)(5). Our opinion will focus exclusively on the question whether Mother could possibly prove that she was entitled to relief from judgment under R.C. 3119.961.

{¶ 66} Mother argues that R.C. 3119.961 is a remedial law. She argues that, according to R.C. 1.11, remedial laws should be interpreted liberally to promote their purposes.

{¶ 67} Mother argues that the relief available from R.C. 3119.961 is open to anyone satisfying the definition of "person" as used in the statute: "a *person* may file a motion for relief from a final judgment, court order, or administrative determination or order that determines that the person or a male minor referred to in division (B) of section 3109.19 of the Revised Code is the father of a child * * *." (Emphasis added.) Mother asserts that the term "person" is gender neutral and should be interpreted to include both men and women. Mother concludes that the relief described in R.C. 3119.961 should be available to the mother of a child and not just to the purported father of a child.

{¶ 68} Father argues that, even if Mother were allowed to invoke the statute, her motion for relief from judgment must be denied under R.C. 3119.962(B), which reads:

{¶ 69} "(B) *A court shall not grant relief from a final judgment,* court order, or administrative determination or order that determines that a person or male minor is the father of a child or from a child support order under which a person or male minor is the obligor *if the court determines, by a preponderance of the evidence, that the person or male minor knew that he was not the natural father of the child* before any of the following:

{¶ 70} "(1) Any act listed in divisions (A)(2)(a) to (d) and (A)(2)(f) of this section occurred.

{¶ 71} "(2) The person or male minor was presumed to be the natural father of the child under any of the circumstances listed in divisions (A)(1) to (3) of section 3111.03 of the Revised Code.

{¶ 72} "(3) The person or male minor otherwise admitted or acknowledged himself to be the child's father." (Emphasis added.)

{¶ 73} Father contends that he was presumed to be the natural father according to R.C. 3111.03(A)(1), that he agreed to pay child support, and that he acknowledged that he was Brooke's father by signing the divorce decree. Father maintains that these are all reasons listed in R.C. 3119.962 as reasons for denying relief from a paternity judgment.

{¶ 74} Father's analysis is correct. A reading of this statute on its face reveals that neither parent in this case could have invoked the right to relief contained in R.C. 3119.961 because both parents are excluded by the provisions of R.C. 3119.962(B). There are two elements that must be established to invoke the exclusions listed in R.C. 3119.962(B). The first requirement is that "the person or male minor knew that he was not the natural father of the child." R.C. 3119.962(B). The parties in this case do not dispute the fact that both of them have always known that Father is not the natural father of Brooke. Mother acknowledges this fact in her brief on appeal:

{¶ 75} "It is undisputed that the Appellee is not the natural father of the minor child **BROOKE L. MYERS**, DOB: 02/25/98. * * * Both Appellant and Appellee are Caucasian and the minor child is African–American. Despite the obvious lack of paternity by the Appellee, he accepted the child as his own."

{¶ 76} There is no doubt that the first required element of R.C. 3119.962(B) has been satisfied. The second required element necessary to invoke the exclusions in R.C. 3119.962 is proof that one of the factors listed in R.C. 3119.962(B)(1) through (3) exists. The record shows that three of the factors are established.

{¶ 77} First, R.C. 3119.962(B)(1) requires the court to deny relief if "[a]ny act listed in divisions (A)(2)(a) to (d) and (A)(2)(f) of this section occurred." The act specified by R.C. 3119.962(A)(2)(a) is that "[t]he person or male minor was required to support the child by a child support order." Thus, if Father was subject to a child-support order, relief cannot be granted under R.C. 3119.961. The record clearly shows that Father was ordered to pay child support for Brooke. This fact, coupled with the fact that both parties knew from her birth that Father was not Brooke's natural father, prohibits either parent from seeking relief from judgment under R.C. 3119.961.

{¶ 78} Second, it is also evident that Father was presumed to be the natural father under R.C. 3111.03(A)(1), which states:

{¶ 79} "(A) A man is presumed to be the natural father of a child under any of the following circumstances:

{¶ 80} "(1) The man and the child's mother are or have been married to each other, and the child is born during the marriage or is born within three hundred days after the marriage is terminated by death, annulment, divorce, or dissolution or after the man and the child's mother separate pursuant to a separation agreement."

{¶ 81} The record reveals that Brooke was born while Mother and Father were married. Therefore, a second factor found in R.C. 3119.962(B)(2) has been established, also preventing the parties from obtaining relief under R.C. 3119.961.

{¶ 82} Finally, a third factor listed in R.C. 3119.962(B)(3) is established by the record. This factor requires proof that the purported father "otherwise admitted or acknowledged himself to be the child's father." The record is replete with evidence that supports this factor. The parties acknowledged that Father is Brooke's natural father in the January 25, 2000 health insurance disclosure affidavit and in the divorce decree and the shared-parenting agreement. Therefore, the factor listed in R.C. 3119.962(B)(3) has also been established, preventing both parents from obtaining relief under R.C. 3119.962.

{¶ 83} Mother also seeks to challenge the trial court's application of R.C. 3119.961 as a violation of the Equal Protection Clauses of the federal and state Constitutions. Constitutional issues should not be decided by the courts unless absolutely necessary. *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396; *State ex rel. Clarke v. Cook* (1921), 103 Ohio St. 465, 134 N.E. 655, syllabus.

{¶ 84} "Although a constitutional question may be legitimately presented by the record, yet if the record also presents some other and satisfactory ground upon which the Court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutionality will be left for consideration until a case arises which cannot be adjudicated without considering it and when, [c]onsequently, a decision upon such question would be unavoidable." *Defiance v. Nagel* (1959), 108 Ohio App. 119, 122–123, 9 O.O.2d 164, 159 N.E.2d 791.

{¶ 85} Assuming arguendo that Mother has standing to seek relief under R.C. 3119.961, the record reveals that Mother is otherwise prohibited from obtaining that relief due to the exclusions listed in R.C. 3119.962(B). Therefore, her constitutional arguments are not ripe for review and need not be addressed.

{¶ 86} We note, without expressing an opinion, that the Tenth District Court of Appeals has recently declared R.C. 3119.961 to be unconstitutional on its face. *Van Dusen v. Van Dusen*, 151 Ohio App.3d 494, 2003-Ohio-350, 784 N.E.2d 750. The facts and reasoning in *Van Dusen* are completely different from that of the case at bar.

{¶ 87} Although our reasons for denying Mother relief under R.C. 3119.961 differ from those of the trial court, we are nevertheless compelled to uphold the judgment of the trial court. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306. The trial court's reasoning unnecessarily raises a constitutional issue that is not necessary to resolve the case. The trial court was correct, though, that Mother cannot obtain relief under R.C. 3119.961. For this reason, we reject Mother's second assignment of error.

{¶ 88} The trial court did not abuse its discretion in modifying the shared-parenting agreement or in overruling Mother's request for relief under Civ.R. 60(B) and R.C. 3119.961. We affirm the judgment but not the reasoning of the trial court in case No. 2001 CO 67, in which the trial court overruled Mother's Civ.R. 60(B) motion. We affirm the judgment and reasoning of the trial court in case No. 2002 CO 35, in which the trial court overruled Mother's objections to the magistrate's decision and modified the parties' shared-parenting agreement.

Judgment affirmed.

GENE DONOFRIO, J., concurs.

DEGENARO, J., dissents with dissenting opinion.

DEGENARO, Judge, dissenting.

{¶ 89} Because the trial court based its decision to terminate the shared-parenting agreement on inadmissible evidence, I must respectfully dissent. In its judgment entry, the trial court acknowledges that it took into account Mother's sexual history when making its determination. Pursuant to the "direct adverse impact" doctrine, a parent's sexual activity may not be taken into account unless it can be proven that the behavior is actually having a present negative effect on the child. The record in this case does not support such a finding, since no testimony was adduced regarding the effects either parent's behavior was having on the minor child. Accordingly, I would reverse and remand this case for further proceedings in which the "direct adverse impact" test should be applied.

{¶ 90} In *Inscoe v. Inscoe* (1997), 121 Ohio App.3d 396, 700 N.E.2d 70, the court followed established precedent and noted that unless a parent's sexual activity directly and adversely impacts the child, the parent's sexual activity ordinarily should not be a basis for modifying a prior allocation of parental rights and responsibilities:

{¶ 91} " ' "[T]he direct adverse impact approach to custody * * * is the soundest, provided certain limitations on its application are adopted. Courts

should consider only present impact. Before depriving a sexually active parent of custody, courts should demand preponderance proof that the parent's conduct is having or is probably having an effect on the child and that the effect is actually harmful. Without such proof, the fact of nonmarital sexual conduct should not justify a custody denial or change. Moreover, on the issue of harmfulness, the primary focus should be on the child's present physical and psychological welfare and developmental potential. Unless accompanied by clearly adverse collateral consequences, moral impact should be ignored." ' " (Emphasis deleted.) *Inscoe* at 413–414, 700 N.E.2d at 81, quoting *Whaley v. Whaley* (1978), 61 Ohio App.2d 111, 119, 15 O.O.3d 136, 399 N.E.2d 1270, quoting Lauerman, Nonmarital Sexual Conduct and Child Custody (1977), 46 U.Cin.L.Rev. 647, 681. See, also, *Beaver v. Beaver* (2001), 143 Ohio App.3d 1, 757 N.E.2d 41.

{¶ 92} A more appropriate standard for considering the alleged moral impropriety of a parent in a custody dispute has been stated as follows:

{¶ 93} "Concern for a child's well-being or best interests does not * * * provide the court carte blanche to judge the rights and lifestyles of parents by nonstatutory codes of moral or social values. Although a court is not obliged to wear blinders as to a parent's lifestyle and/or morals, including sexual conduct, any state interest in competing lifestyles and accompanying moral values which affect child custody would most equitably be served if limited to a determination of the direct or probable effect of parental conduct on the physical, mental, emotional, and social development of the child * * *." *Rowe v. Franklin* (1995), 105 Ohio App.3d 176, 179, 663 N.E.2d 955.

{¶ 94} Here, there was a great deal of proof that the Mother was not leading the most conventional of lives. Admittedly, Mother carried on her atypical sexual practices under the same roof as her child. However, the record indicates that any sexual practices which could be considered potentially harmful to the child were kept private. Moreover, the record is devoid of any proof that the minor child was affected in any way by Mother's behavior. To the contrary, there was evidence that the child was doing well in the custody of Mother.

{¶ 95} Because there is no way to determine how much weight the trial court actually placed on Mother's sexual behavior when making its determination to terminate the shared-parenting agreement, I would remand this case to the trial court so that it could make its determination by applying the direct-adverse-impact test.