OPINION
{¶ 1} The appellant, Twyla Stillings, n.k.a. Twyla Carter, appeals the November 14, 2003 judgment of the Common Pleas Court of Union County, Ohio, terminating the shared parenting plan she had with her former husband, Appellee Joshua Stillings, and naming Joshua the residential parent and legal custodian of their minor daughter, Kayla Stillings.
 {¶ 2} On October 22, 2001, the marriage between Twyla and Joshua was dissolved by the Union County Court of Common Pleas, Domestic Relations Division. Included in this dissolution was a shared parenting plan for Kayla. This plan designated Twyla as the residential parent when Kayla was in her care, and Joshua had this designation during his parenting time, which occurred every Monday from 1:00 p.m. until 9:00 p.m. the following day and every other weekend. In addition, the plan stated that "[t]he child shall enroll in the school district in which the Father is residing."
 {¶ 3} At the time of the dissolution, Joshua lived in Marysville, Ohio, in Union County, and Kayla was only four and not enrolled in school yet. However, by the time that Kayla was old enough to be enrolled in kindergarten Joshua was then living in Marion County, Ohio, and enrolled his daughter in kindergarten in Marion County. Twyla disapproved of this and failed to bring Kayla to school in Marion County. Instead, she enrolled Kayla in kindergarten in Logan County, Ohio, where she resided, and had her daughter attend school there.
 {¶ 4} Twyla then filed a motion with the Union County Common Pleas Court, requesting that it relinquish jurisdiction to the Logan County Common Pleas Court. She also filed a motion for reallocation of parental rights and responsibilities, requesting that she be designated the residential parent for school purposes. In addition, Twyla submitted an affidavit to the Union County Court, wherein she attested that she had filed a "Motion to Assume Jurisdiction," a "Motion for Reallocation of Parental Rights and Responsibilities," and a "Motion for Temporary Custody Ex-Parte" in the Logan County Common Pleas Court, Juvenile Division.
 {¶ 5} In response to Twyla's motion, Joshua filed memorandums in opposition, an ex parte motion for temporary custody, and a motion to show cause as to why Twyla should not be held in contempt for repeatedly denying him his parenting time. Joshua also moved the court to find that the initial shared parenting plan continued to be in Kayla's best interest or, in the alternative, that he be named the sole residential parent of Kayla and be awarded child support pursuant to statutory guidelines.
 {¶ 6} These motions were heard by the trial court on October 14, 2003. At the conclusion of the hearing, the trial court expressed reservations about ruling on these motions and urged the parties to attempt mediation to resolve their dispute, which primarily concerned the county in which Kayla would be enrolled in school. The parties agreed, and mediation was attempted. However, mediation was unsuccessful. As a result, Joshua filed a "Motion for Ruling or Further Hearing" on November 13, 2003. The following day, the trial court rendered its decision on the pending motions. The court terminated the shared parenting plan, designated Joshua as the residential parent, awarded him child support, and provided Twyla visitation in accordance with the court's standard visitation guidelines. This appeal followed, and Twyla now asserts one assignment of error.
It was reversible error for the court to rule on plaintiff'smotion without giving the defendant the opportunity to respond aspermitted in Ohio rules of civil procedure 7(b)(2) and the unioncounty local rules of Court 11.01.
 {¶ 7} In her sole assignment of error, Twyla maintains that the trial court denied her due process of law by not permitting her time to respond to Joshua's "Motion for Ruling or Further Hearing." In support of this position, Twyla cites to Civ.R. 7(B)(2) and Union County Local Rule 11.01.
 {¶ 8} Civil Rule 7(B)(2) states, "[t]o expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." Pursuant to this rule, the Common Pleas Court of Union County enacted Local Rules 11.01 and 11.02. These rules state:
11.01. Motions shall be accompanied by a memorandum statingthe grounds therefore and citing the authorities and reasonsrelied upon. Within 14 days after service of such Motion, eachparty opposing the Motion shall respond. Upon expiration of thetime for filing memoranda, the matter shall be deemed submitted.Failure to file a memorandum at the time required is a waiver andconsent to submit the issue or case to the Court forthwith fordecision.
 11.02. Motions shall, at the discretion of the Court, be ruledupon pursuant to Civil Rule 7(B)(2). Oral hearings on motionsshall be set only where the party seeking same demonstrates suchneed in writing prior to the expiration of fourteen days.
 {¶ 9} Twyla contends that the trial court violated its own local rules by not permitting her time to respond to Joshua's last motion. In response, Joshua maintains that this "motion," although captioned as such, was not in actuality a motion, which would provide Twyla with fourteen days to respond. Rather, he contends that this "motion" was a notice to the court that the matter was ready for a decision due to the unsuccessful mediation between the parties. Thus, he asserts that the trial court was merely asked to render a decision based upon the evidence it obtained from the parties at the hearing, which it always had the authority to do, and that a response from Twyla was unnecessary because she was afforded a full and fair opportunity to be heard at the hearing on October 14, 2003.
 {¶ 10} Although we agree with the assertion of counsel for Joshua that a court has the power to render a decision in a case based upon the evidence adduced at an evidentiary hearing, in the case sub judice, it is our conclusion, based in significant part upon the comments of the trial court at the conclusion of the evidence, that the hearing on the reallocation of parental rights and responsibilities was incomplete.
 {¶ 11} The Revised Code section that governs the modification of a prior decree of the allocation of parental rights and responsibilities, provides:
The court shall not modify a prior decree allocating parentalrights and responsibilities for the care of children unless itfinds, based on facts that have arisen since the prior decree orthat were unknown to the court at the time of the prior decree,that a change has occurred in the circumstances of the child, hisresidential parent, or either of the parents subject to a sharedparenting decree, and that the modification is necessary to servethe best interest of the child. In applying these standards, thecourt shall retain the residential parent designated by the priordecree or the prior shared parenting decree, unless amodification is in the best interest of the child and one of thefollowing applies:
 * * * (iii) The harm likely to be caused by a change of environmentis outweighed by the advantages of the change of environment tothe child.
R.C. 3109.04(E)(1)(a). However, the Seventh District Court of Appeals recently noted that division (E)(2) of this section "provides a number of independent bases for modifying or terminating a shared-parenting agreement that do not require a finding of change in circumstances" or a determination regarding the harm likely to be caused to the child. Myers v. Myers,153 Ohio App.3d 243, 2003-Ohio-3552, at ¶ 34. For instance,
[i]n addition to a modification authorized under division(E)(1) of this section: * * * (c) [t]he court may terminate aprior final parenting decree that includes a shared parentingplan approved under division (D)(1)(a)(i) of this section uponthe request of one or both of the parents or whenever itdetermines that shared parenting is not in the best interest ofthe children.
R.C. 3109.04(E)(2)(c). Although this Court has previously held that division (E)(2)(c) "is subordinate to the general provisions of R.C. 3109.04(E)(1)(a)[,]" we further found that "in certain circumstances the trial court need not determine whether a change in circumstances had occurred prior to modifying a shared-parenting decree." Patton v. Patton (2001),141 Ohio App.3d 691, 695, citing Inbody v. Inbody (June 5, 1995), Hancock App. Nos. 5-94-37, 5-94-46, unreported, 1995 WL 328095;In re Reid (July 10, 1998), Paulding App. No. 11-98-3, unreported, 1998 WL 409115.
 {¶ 12} While the Revised Code provides varying methods by which a court may modify or terminate a shared parenting decree, notably, under each provision of R.C. 3109.04(E), the court is always required to determine whether such modification or termination is in the best interest of the child. In making a determination regarding a child's best interest,
the court shall considerer all relevant factors, including,but not limited to:
 (a) The wishes of the child's parents regarding the child'scare;
 * * * (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, andcommunity;
 * * * (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 * * * (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court[.]
R.C. 3109.04(F)(1).
 {¶ 13} In this case, the trial court relied upon R.C.3109.04(E)(1) in its November 14, 2003 judgment entry, specifically finding that the termination of the shared parenting plan was in the best interest of Kayla. However, the court did not delineate the basis for this finding. While a court is not required to "delineate every shred of testimony and evidence upon which it relied in rendering its decision," Alexander v. Oiler
(Jan. 10, 1997), 2nd Dist. No. 96-CA-03, unreported, 1997 WL 7166, we find the failure to do so in this instance highly questionable given the reservations expressed by the court during the hearing.
 {¶ 14} At the conclusion of the presentation of evidence by the parties, the court expressed many concerns about its ability to render a decision in this case. Specifically, the trial judge stated, "So it seems to me that I'm in a box because both of you, I think, are asking that the shared parenting plan be continued. Now, thinking about the appropriate law, I don't see how I can continue it." The court further stated,
And so I think what you're doing is putting me in a positionor I think what you have done is put me — not only you. I thinkyou and I think all four of you have put me in the position ofdoing away with the shared parenting plan and showing who's goingto be a residential parent. And I go back to position one on thiswhole business. Now, I've said what I think is where I think I amin the box. But let me tell you what I think. I'm in the worseshape in the box.
The judge then discussed the state of the evidence, including the fact that if he were to terminate the shared parenting plan, he would have to determine child support, which he could not do because the parties did not present sufficient evidence in order to correctly calculate the amount of support. In informing the parties and their respective counsel about this dilemma, the trial judge stated, "Now, how can I — how can I change everything and thinking about the best interest of the child because that's first. * * * I think I've got to do away with the shared parenting plan. I truly believe that. But how can I do itbecause I don't have everything." (Emphasis added.)
 {¶ 15} The trial judge also expressed concern with the fact that the parties did not present evidence regarding the school Kayla currently attends or the school in Marion County. In conveying this concern, the judge said,
Now, go back to the best interest of the child. Who would thatbe? * * * But I didn't hear about school and I didn't hear, youknow, where are we there? Because that's what really caused thisproblem to begin with, I think, to begin with. * * * And so youtell me, how can I — and I'm serious — how can I do the bestinterest of the child? And at the time to do it so that the Courtof Appeals is going to say, yes, Judge. You did the best. Youdid. And you did it under the law and I don't know how.
 {¶ 16} Throughout the judge's colloquy, he asked counsel for the parties to provide him with suggestions as to how to alleviate his concerns. In response, counsel for Twyla repeatedly suggested that a further hearing should be conducted in order to provide the court with the information it needed to make its decision. Additionally, counsel for Joshua suggested that the court's concerns regarding child support could be eliminated by using the affidavits filed by both Joshua and Twyla as to their respective incomes. However, the court noted that the affidavits were not submitted into evidence at the hearing.
 {¶ 17} At some point, mediation was suggested, and the trial court explained the process of mediation to the parties. During this explanation, the court told the parties, "So I'll promise you this. I'll try to — I'll try to get mediation yet this week and if I can't, I'll do my very best to fix you folks up with afurther hearing and I mean right away." (Emphasis added.) After this explanation, the parties then agreed to mediation.
 {¶ 18} Although the discussion between the judge and the parties indicates that the judge clearly thought that termination of the shared parenting plan had to occur, it also indicates that he had serious reservations about being able to adequately reallocate the parties' parental rights and responsibilities. In particular, the trial court was concerned with being able to determine the best interest of the child based upon the limited evidence presented on October 14, 2003. Thus, the abrupt rendering of a final judgment one month later without a further hearing and without a response by Twyla is somewhat troubling considering the status of the record at the conclusion of the hearing and the judge's promise to the parties when explaining the mediation process.
 {¶ 19} Furthermore, counsel for Twyla was very clear in her position that additional evidence would be needed, particularly in the area of support and schooling for Kayla, in order for the trial court to make a determination of Kayla's best interest. Had the trial court permitted Twyla an opportunity to respond to Joshua's request that the court render a decision or hold an additional hearing, she could have informed the court of her position in regards to this request and provided support for this position. However, the court's quick action prevented her from doing this. In addition, the trial court's decision was made without sufficient evidence to fully determine Kayla's best interest and despite the judge's statement that he would schedule another hearing. Therefore, for all of these reasons, including the fact that the trial court appears to have proceeded in derogation of its own local rules, it is our conclusion that the trial court erred in issuing a final judgment reallocating the parties' parental rights and responsibilities, and the assignment of error is sustained.
 {¶ 20} For these reasons, the judgment of the Common Pleas Court, Domestic Relations Division, of Union County, Ohio, is reversed and the cause remanded for further proceedings in accordance with law.
Judgment reversed and cause remanded.
Cupp and Bryant, JJ., concur.