OPINION
{¶ 1} These two appeals challenge a judgment entry terminating a shared parenting agreement and granting custody of minor children Vanessa Pasco, d.o.b. 4/1/99, and Jimmy Pasco, d.o.b. 2/23/97, to their father, Appellee Jason Pasco ("Jason"). Appellant Lisa J. Pasco ("Lisa"), the mother of the two children, argues that it was in the best interests of the children for her to be designated as their legal custodian, and that the Jefferson County Court of Common Pleas abused its discretion in awarding custody to Jason. The record supports the trial court's decision, and the judgment is hereby affirmed.
 {¶ 2} On February 7, 2000, Lisa filed a "Petition for Allocation of Parental Rights and Responsibilities" in the Jefferson County Court of Common Pleas, Juvenile Division. She alleged that she was the mother of Jimmy and Vanessa, and that Jason refused to allow her to have access to the children. After a hearing, the court designated Lisa as the residential parent of the two children, and gave Jason visitation rights. (3/10/00 J.E.)
 {¶ 3} On October 20, 2000, the parties submitted a shared parenting plan to the court. The court adopted the shared parenting plan on October 20, 2000, and designated both parents as the residential parents of the two children.
 {¶ 4} On August 29, 2002, Lisa filed a motion to reallocate parental rights and responsibilities, and asked to be named as the sole residential parent. Jason filed a similar motion on December 19, 2002, and also requested that any visitation between Lisa and the children be supervised visitation. The court ordered supervised visitation the same day, and a magistrate's hearing was held on February 19, 2003, to resolve the motions to modify parenting.
 {¶ 5} On February 25, 2003, the magistrate modified the shared parenting agreement by giving Lisa the right to decide if Vanessa would attend preschool. All other aspects of the shared parenting agreement continued unchanged. Jason filed objections to the magistrate's decision, and the juvenile court sustained the objections and returned the case to the magistrate for a full hearing on all issues. (6/30/03 J.E.)
 {¶ 6} A magistrate's hearing was held on August 13, 2003. On September 9, 2003, the magistrate issued a temporary order suspending the shared parenting plan and designating Jason as the residential parent and legal guardian of the children. The magistrate also continued to require Lisa to submit to supervised visitation of the children.
 {¶ 7} On September 9, 2003, the magistrate issued its decision. The magistrate terminated the shared parenting agreement and awarded full legal custody of the children to Jason, with Lisa receiving residual visitation rights.
 {¶ 8} On September 26, 2003, Lisa filed a request for findings of fact and conclusions of law. On September 30, 2003, the magistrate issued an order giving the parties until October 8, 2003, to file proposed findings of fact and conclusions of law. Lisa submitted the proposed findings of fact and conclusions of law on November 3, 2003, and Jason submitted his version on December 2, 2003.
 {¶ 9} On December 15, 2003, the court filed its judgment entry adopting the magistrate's decision. The court noted that neither party submitted its proposed findings of fact and conclusions of law by the October 8, 2003, deadline. The court held that it was in the best interests of the children that Jason be awarded legal custody of the children, and that Lisa receive residual parenting rights including visitation. The court terminated the shared parenting agreement. The court filed a corrected nunc pro tunc judgment entry on December 19, 2003. This timely appeal was filed on January 15, 2004.
 {¶ 10} Lisa's sole assignment of error asserts:
 {¶ 11} "The trial court abused its discretion in awarding legal custody of the minor children to [Jason] in the case at bar."
 {¶ 12} Lisa argues that the trial court must consider the factors listed in R.C. § 3109.04(F) in making a child custody decision, and that the overarching goal of child custody proceedings is to protect the best interests of the children. Lisa contends that Jason has neglected the children and has failed to deal with problems that have arisen while the children were in his care. Lisa points to a series of incidents that reflect negatively on how Jason has acted during his time as residential parent. For example, Lisa alleges that on one occasion the children were allowed to come into contact with diesel fuel, and at another time the children wandered off into the woods and onto a road without being attended by an adult. Lisa also claims that Jason failed to get timely medical treatment for Jimmy when he had a severe case of poison ivy. Lisa claims that Jason is unemployed, is about to lose his trailer through foreclosure, and leaves the children for long periods of time with their grandparents. These facts, according to Lisa, indicate an abuse of discretion by the trial court in awarding custody to Jason.
 {¶ 13} A reviewing court is guided by a presumption that a trial court's decision regarding child custody matters is correct. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. A child custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. An abuse of discretion constitutes more than an error of law or judgment, and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. While a trial court's discretion in a custody proceeding is broad, it is not absolute, and the trial court must follow the procedure described in R.C. § 3109.04 in making its custody decisions. Miller,37 Ohio St.3d at 74, 523 N.E.2d 846. R.C. § 3109.04(F)(1) sets forth a nonexclusive list of factors that the trial court must consider in evaluating the best interests of the children:
 {¶ 14} "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 15} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 16} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 17} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 18} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 19} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 20} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 21} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 22} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 23} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 24} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 25} This Court has recently held that a trial court may modify or terminate a shared parenting agreement at any time if such action is in the best interests of a child who is subject to the agreement. Myers v. Myers, 153 Ohio App.3d 243,2003-Ohio-3552, 792 N.E.2d 770, ¶ 40; see also R.C. §3109.04(E)(2). When a trial court terminates a custody order contained in a shared parenting agreement, the court then proceeds as if the shared parenting agreement had never existed. R.C. § 3109.04(E)(2)(d). In the case at bar, the shared parenting agreement was the initial custody decision. Once the shared parenting agreement was dissolved, the trial court was required to proceed as if it were making an initial custody decision. An initial custody decree requires the court to consider only the best interests of the child in rendering its decision. Rowe v.Franklin (1995), 105 Ohio App.3d 176, 180, 663 N.E.2d 955.
 {¶ 26} The record contains a considerable amount of evidence that weighs against Lisa being designated as the residential parent and full legal custodian of the children. What follows is a list of some of the facts that the trial court was able to rely upon in determining which parent would better represent the best interests of the children as the residential parent:
 {¶ 27} 1. Lisa lived with a man who threatened to drown one of her children. (Tr., pp. 30-31.)
 {¶ 28} 2. Lisa had custody of the children when Vanessa was bitten by a cat which raised the possibility Vanessa had contracted rabies. (Tr., pp. 33-34.)
 {¶ 29} 3. Lisa neglected to take Vanessa to receive one of the required rabies shots. (Tr., pp. 34-35.)
 {¶ 30} 4. Lisa lived in four different school districts from May, 2000, until August, 2003. (Tr., pp. 16, 63.)
 {¶ 31} 5. Lisa was unemployed at the time of the hearing. (Tr., p. 21.)
 {¶ 32} 6. Lisa had attempted suicide at age 17. (Tr., pp. 28-29.)
 {¶ 33} 7. Lisa suffered from anxiety and depression, and was taking medication for both. (Tr., pp. 29, 122.)
 {¶ 34} 8. Lisa had been under a court order limiting her visitation with the children. (Tr., p. 56.)
 {¶ 35} 9. Lisa once was angry with Jimmy and threw the child at Jason. (Tr., pp. 67-68.)
 {¶ 36} 10. Lisa dropped Vanessa on the floor, when Vanessa was less than five months old. (Tr., pp. 68-69.)
 {¶ 37} 11. Lisa once jumped out of a moving car going 25-30 mph. (Tr., p. 72.)
 {¶ 38} 12. Lisa has trouble controlling her anger. (Tr., p. 72.)
 {¶ 39} Lisa would have this Court ignore the aforementioned facts and focus almost exclusively on the negative aspects of Jason's designation as the residential parent. There is no denying that much of the evidence presented at the August 13, 2003, custody hearing does not reflect positively on Jason. The record reflects that:
 {¶ 40} 1. Jason let Vanessa use an electric razor and she shaved her head on more than one occasion, at age three. (Tr., p. 76.)
 {¶ 41} 2. Jason let the children wander away from a neighbor's farm and onto a road, at ages three and five, beyond the sight of any adult supervision. (Tr., p. 71.)
 {¶ 42} 3. Jason left Vanessa alone in a room with a BB-gun and she shot the gun. (Tr., p. 91.)
 {¶ 43} 4. Jason had custody when the children found a drum with diesel fuel in it, and they got the fuel on their shoes and pants. (Tr., p. 70.)
 {¶ 44} 5. Jason is behind in his mortgage payments on his double-wide trailer, and it is in foreclosure. (Tr., p. 111.)
 {¶ 45} 6. From June 11 to July 13, 2003, the children were supposed to be in Jason's custody, but were shuttled back and forth between Mr. Pasco's mother and Mrs. Pasco's parents. (Tr., pp. 80-81.)
 {¶ 46} 7. Jason had custody of Jimmy when he contracted poison ivy in his groin area, and he did not take Jimmy for medical treatment until the next morning. (Tr., p. 86.)
 {¶ 47} 8. Jason was recently fired from his job and was unemployed at the time of the custody hearing. (Tr., p. 73.)
 {¶ 48} Given the conflicting evidence concerning the qualifications of both parents to act as the residential parent of the children, the trial court was acting within its discretionary power to designate either parent as the residential parent. The fact that the court chose to award full legal custody to Jason is completely consistent with the evidence presented at the final custody hearing on August 13, 2003. For these reasons, we overrule Lisa's sole assignment of error and we affirm the judgment of the Jefferson County Court of Common Pleas, Juvenile Division.
Vukovich, J., concurs.
DeGenaro, J., concurs.