OPINION
{¶ 1} Plaintiff-appellant Cindy Septer ("mother") appeals the June 9, 2005 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which denied her Motion for Custody of her four minor children. Defendant-appellees are Bob and Karen Septer ("grandparents").[1]
 STATEMENT OF THE FACTS AND CASE {¶ 2} Mother is the biological mother of Michael Septer (DOB 7/9/88); Michella Septer (DOB 4/6/93); Bobbie Sue LeGlise (DOB 3/31/95); and Savannah Septer (DOB 10/4/97).[2] As a result of a previously filed dependency and neglect case, the children were placed in the legal custody of grandparents in early March, 2004. Four months later, on July 1, 2004, mother filed a complaint for change of custody.
 {¶ 3} The matter proceeded to hearing before the trial court on March 3, May 5, June 2, and June 6, 2005. The following evidence was adduced at the hearing.
 {¶ 4} Timothy Wicks, a licensed outpatient counselor with Personal and Family Counseling in New Philadelphia, Ohio, testified he began counseling mother in 2002, as part of her case plan through Job and Family Services. Mother first met with Wicks in May, 2002. After attending four sessions, mother's file was closed. Personal and Family Counseling reopened mother's file in October, 2002, and Wicks worked with her through March, 2004. Wicks testified, at the time of mother's discharge, he did not observe anything which would indicate to him placement of the children with mother would be harmful to them. Wicks acknowledged he had not observed mother with the children. Wicks further indicated mother never addressed any parenting issues in any significant way and she was never particularly forthcoming with any information concerning the circumstances in which the children were being raised in her home. At the time of mother's discharge, Wicks did have concerns about mother's dependent relationships. During their sessions, Wicks did not hear mother acknowledge her involvement in dependent relationships.
 {¶ 5} Four witnesses testified on mother's behalf: James Wallick, Denny Baumgarner, Larry Wallick, and Solisa Wallick. James Wallick, the brother of mother's live in paramour, Larry Wallick, testified he has known mother for approximately three years and sees her every couple of weeks. James Wallick described the home in which mother lives and the condition in which she keeps it. James Wallick sees mother with the children approximately once a month. He described the children's behavior as "actually better than most children". Tr at 63. Wallick added he has never seen mother do anything inappropriate to the children and knows mother enjoys being with the children. On cross-examination, Wallick acknowledged he has never seen mother in a situation where she has had to discipline the children.
 {¶ 6} Denny Baumgarner, mother's half sister, testified she sees mother often, sometimes as much as twice a week. Baumgarner also described the home and the condition in which mother kept it. When asked if she had ever observed mother discipline the children, Baumgarner answered, "Maybe correct them * * * it's just average things, you know, it's just average discipline. Nothing severe or nothing —" Tr at 69. Baumgarner has never seen mother physically spank the children, noting mother generally uses verbal correction in order to discipline them. She added mother and the children seem happy to be with each other. Baumgarner stated she has noticed a closeness with the family which did not exist prior to the children's removal from mother's home.
 {¶ 7} Larry Wallick, mother's live-in paramour, testified he and mother live in a home he has owned since 1976. The property on which the house is located also includes three residential trailers, which Wallick rents. Mother approached Wallick in September, 2003, about renting one of the trailers. At the time, Wallick did not have any vacancies so mother lived with Solisa Wallick, his daughter-in-law and mother's friend. In January, 2004, a trailer became available. Mother moved into the house on the property and Wallick moved in to the vacant trailer. In order to pay her rent, mother worked for Wallick, running a bobcat, bookkeeping, and assisting in other general matters. Wallick sees mother's children every weekend. Wallick has never seen any significant discipline problems during the times the children are with mother at the home. He stated mother loves the children, and the children definitely love her. He added mother is very stern on homework and doing well in school. Mother disciplines the children by having them stand in a corner for five or ten minutes. Wallick has never seen mother physically hit the children. Wallick has never heard mother curse at the children or call them names. When asked if he would like to see the children come live with him, Wallick commented, "It would be ok", Tr at 89.
 {¶ 8} Solisa Wallick, Larry Wallick's daughter-in-law, testified she has known mother for over twenty-five years. Solisa testified she sees mother's children on a regular basis as she lives only a short distance from mother's home. When Solisa sees the children, they are properly fed, clothed, and bathed. She added the children are well behaved and seem happy when they are with mother.
 {¶ 9} Grandfather testified when he and grandmother were granted custody of the children, mother's visitation with the children was left to grandparents' discretion. Grandfather noted mother's visitation has steadily increased over time. He has noticed changes in mother from both an emotional and an environmental standpoint. Grandfather is satisfied the environment in which mother now lives is suitable and acceptable for the children. He acknowledged the children enjoy being with mother. If the court gave mother custody of the children, grandfather would not have a problem with such a decision. Grandfather is confident mother would abide by any court order which prohibited her adult daughter and mother's own mother from being around the children. Grandfather added he, however, would be very concerned if mother's adult son moved onto the Wallick property. Grandfather explained mother's adult children are bad influences on the minor children, and he was concerned mother would allow them to be around the younger children. Grandfather, however, did not believe mother would take a chance on losing her children again. Grandfather commented he has seen a change in mother's lifestyle over the last year and a half, but could not know if the change was permanent.
 {¶ 10} Mother testified on her own behalf. She acknowledged part of the concerns resulting in the dependency and neglect case arose from her association with certain people, one of them being her daughter, Lora-Lye. Mother states she currently only has telephone contact with her oldest daughter and does not let Lora-Lye see the younger children. With respect to her adult son, Jay, mother acknowledged he was going to move onto the Wallick farm property, but once she was told it would not be appropriate for him to be around the younger children, she did not allow it. The trial court questioned mother as to why she had to be told it would not be appropriate for Jay to move on to the Wallick property. Mother informed the trial court she originally did not think the situation was inappropriate because Jay would not be at her house or near her house.
 {¶ 11} Mother testified she received her high school diploma, and is currently enrolled in a home based college program through Phoenix University. Mother stated she does not spank the children, but stands them in the corner for discipline. Mother acknowledged grandparents take appropriate care of the children. Mother testified she is currently not working as a result of a car accident in October, 2004. When asked by the trial court how she was running heavy equipment such as a bobcat, bulldozer, backhoe, and a tractor for Wallick, mother explained she was merely sitting on the equipment. Mother acknowledged she is still married to Robert Septer, Jr., but added she has not lived with him for five years. When asked by the trial court asked if she sees a problem with the fact she is living with Larry Wallick, but still married to Robert Septer, Jr., mother replied, "No".
 {¶ 12} Susan Engle, the guardian ad litem for the children, testified a clear issue at the time the children were originally removed from mother's care was mother's association with her son and daughter, whom both have criminal records. Although Engle recognized mother has made progress, the guardian added mother has never taken responsibility for what happened to the children, and sees herself as the victim. Engle also expressed concerns over mother's relationship with Larry Wallick due to her dependency on him for emotional as well as financial support. Mother has never been independent, always having her husband or another man in her life. Engle stressed mother needs to know she can function without the help of other people.
 {¶ 13} Barbara Schwartz, a clinical therapist with Chrysalis Counseling Center, testified she conducted two assessments of mother, the first on May 27, 2003, and the second on June 28, 2004. Schwartz noted the 2003 assessment indicated significant problems with mother regarding her ability to have custody of the children and serve as an appropriate parent. Specifically, Schwartz stated that mother was unable to support Bobbie Sue's relationship with her father, Mark LeGlise. She noted mother was defensive and had difficultly with insight and judgment regarding the children. Schwartz stated the 2004 assessment showed some improvement, however, Schwartz did not believe mother was in a position to take over full parenting of the children at that time.
 {¶ 14} Schwartz explained her major concern was mother not living independently, and what would happen to mother if Larry Wallick, his residence, and support were no longer available to her. The testing indicated mother avoided self disclosure. Her diagnostic testing also evidenced antisocial personality features and obsessive compulsive personality features. With respect to mother's anger management, Schwartz stated mother was significantly less angry and defensive during the 2004 assessment. Schwartz also expressed concerns regarding mother's ability to deal with life stressors as she was living her life "kind of insulated". Tr at 215. Schwartz explained mother's friendships are based upon Larry Wallick and his family, and she has not developed her own support system outside of that. Schwartz added mother has not developed her own sense of identity and does not have an appreciation for what she can do on her own. In response to the trial court, Schwartz stated mother's antisocial personality features and obsessive compulsive features were long term and chronic traits. Schwartz questioned whether the situation was stabilized versus whether mother was stabilizing. Upon conclusion of Schwartz's testimony, the trial court asked the therapist, "But in her given living situation, it's certainly difficult for you to assess how well she has dealt with any of the long term chronic issues, would that be correct?" Tr at 223. To which Schwartz replied, "That's correct." Id.
 {¶ 15} Following the presentation of evidence, the attorneys for mother and Mark LeGlise, the guardian ad litem, and grandfather made closing remarks to the court. The trial court took the matter under advisement. Via Judgment Entry filed June 9, 2005, the trial court denied mother's motion, finding it was not in the best interest of the children to place them in her custody.
 {¶ 16} It is from this judgment entry the mother appeals, raising the following assignment of error:
 {¶ 17} "I. THE REFUSAL OF THE TRIAL COURT TO PLACE THE CHILDREN WITH THEIR MOTHER WAS NOT SUPPORTED BY THE EVIDENCE."
 I {¶ 18} In her sole assignment of error, mother maintains the trial court's refusal to place the children in her custody was not supported by the evidence.
 {¶ 19} The basic standard of review of a trial court's decision regarding child custody is whether the trial court abused its discretion. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. "A child-custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion." Myers v. Myers, 153 Ohio App.3d 243,2003-Ohio-3552, 792 N.E.2d 770, ¶ 43. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. In applying the abuse-of-discretion standard, appellate courts are admonished that they are not to substitute their judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe1 (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181; Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 20} Based upon the evidence presented at the hearing, which is set forth supra, we find the trial court did not abuse its discretion in denying mother's motion for custody of the children. Although there was ample evidence to show mother has made progress with the children, and the children desired to live with her, the evidence also indicated mother had not made any significant improvements in her emotional stability or lifestyle which would provide permanent positive changes in her parenting. Further, as Barbara Schwartz testified, "The stability of the family and parent/child relationship is contingent upon the successful maintenance of [mother's] dependent relationship with her employer, landlord, friend, and romantic interest * * * the dependent pattern of enmeshed relationships and boundary issues remains problematic. [Mother] could not identify any type of future plan or goal to provide for significant or emotional, financial needs of her children."
 {¶ 21} Mother's sole assignment of error is overruled.
 {¶ 22} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
Hoffman, P.J. Farmer, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] Grandparents did not file a brief in this matter.
[2] Robert Septer, Jr. is the biological father of Michael, Michella, and Savannah. Mark LeGlise is the biological father of Bobbie Sue. Both fathers were named as defendants. Mark LeGlise petitioned the trial court for custody of Bobbie Sue. The trial court withheld a ruling on his motion. Neither father is a party to this appeal.