[Cite as *In re A.S.*, 2012-Ohio-5468.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 11 JE 29 |
| | ) | |
| A.S. | ) | |
| | ) | |
| JENNIFER JOYNSON, nka | ) | |
| JENNIFER MILITZER | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | OPINION |
| | ) | |
| VS. | ) | |
| | ) | |
| JACQUELINE DITORO, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
                             Pleas, Juvenile Division, of Jefferson
                             County, Ohio
                             Case No. 04CU96

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Mary Corabi
                             424 Market Street
                             Steubenville, Ohio  43952

For Defendants-Appellants:   Atty. John J. Mascio
                             325 North 4th Street, Lower Level
                             Steubenville, Ohio  43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                             Dated:  November 19, 2012

WAITE, P.J.

{¶1}   Jacqueline Ditoro ("Appellant") is the natural mother of minor child A.S. She is appealing the judgment of the Jefferson County Court of Common Pleas, Juvenile Division, reallocating her parental rights over A.S.  Appellant's half-sister, Jennifer Militzer ("Appellee"), who had been the de facto custodian for most of the child's life, filed a motion in June of 2010 for custody of the child.  After an extensive hearing, the court granted the motion.  Appellant is challenging whether the court properly found that she was unsuitable as a parent under the test established by *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977).  The record supports the court's conclusion that Appellant was unsuitable as a parent and that it would be detrimental for the child to remain in her custody.  Appellant concedes that she was unable to care for her daughter for extended periods in the years 2004, 2008 and 2009, and that she voluntarily placed the child in Appellee's custody each time.  The record contains evidence that Appellant has had mental health problems, neglected the child's medical and general health needs, allowed the child to live in a filthy environment, could not provide a stable living situation for the child, and barely kept in contact with the child during the pendency of the custody proceeding.  The test set forth in *Perales* has been met.  The judgment of the trial court is affirmed.

<u>History of the Case</u>

{¶2}   Problems regarding the custody of A.S. have been ongoing since the first few days after the child was born on September 20, 2004.  Appellant was 19 years old at the time.  Appellant was then married to Matthew Sommers, but he was not the biological father of the child.  It was later determined that Christopher

Wadford was the father. He is not a party to this appeal, although he was involved in some of the earlier proceedings in this case.

{¶3} Appellee is the child's maternal aunt. Appellee and Appellant are half-sisters, sharing the same father but not the same mother. On November 3, 2004, Appellee filed a juvenile complaint for custody of A.S. The record reflects that Appellant was suffering from post-partum depression and wanted to find the father of the child, so she left A.S. with Appellee and traveled to Tennessee to look for him. The court designated Appellee as the residential parent during the pendency of the custody action. Appellant was indigent and counsel was appointed to represent her in the juvenile court proceedings. On August 11, 2006, by agreed judgment entry of all the parties involved, Appellant was designated as the residential parent of the child.

{¶4} The record reflects that Appellant again left A.S. in the care and custody of Appellee in late 2008. Appellant took the child back in July of 2009, but after three weeks returned the child to Appellee due to new personal problems that had arisen. Appellant signed a guardianship agreement on August 21, 2009, granting Appellee temporary custody for the indefinite future.

{¶5} On June 10, 2010, Appellee filed a motion to become the residential parent and legal custodian of the child, and the court granted temporary custody to her. On June 17, 2011, the magistrate held an extensive hearing that included the testimony of the parties and various relatives of the child. The magistrate filed his decision on July 7, 2011. The magistrate determined that Appellee had physical custody of the child for most of the time from September of 2004 to August, 2006,

and part of the time during 2007-2008. She gained full-time custody again from December of 2008 to the date of the hearing. The magistrate examined the factors described in *Perales* and found that the child spent most of its life with Appellee; that the child had health issues while in the care of Appellant; that the child "bounced" from home to home while in Appellant's care; that Appellant allowed the child to fall behind in required immunization shots; and that these facts were all detrimental to the child. The magistrate found Appellant to be unsuitable as a parent. He designated Appellee as legal custodian of the child, and designated the natural parents as non-residential parents. Appellant was given visitation rights.

{¶6} Appellant filed objections, arguing that the child had not spent most of its life with Appellee and that the child did not have health issues while in Appellant's care. The trial court overruled the objections and adopted the magistrate's decision on October 31, 2011. This appeal followed.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FINDING APPELLANT TO BE UNSUITABLE AS A PARENT AND THE DESIGNATION OF APPELLEE AS LEGAL CUSTODIAN WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} In Appellant's sole assignment of error, she argues that the trial court's finding that she was unsuitable as a parent (and by extension, that it was improper to grant custody of the child to a non-parent) was against the manifest weight of the evidence. The record contradicts Appellant's argument.

**{¶8}** A parent's right to raise his or her child is an essential and basic civil right. *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, a parent may lose custody of a child to a non-parent if a court finds the parent unsuitable. *In re Perales, supra*, 52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus. Thus, in child custody proceedings pursuant to R.C. 2151.23(A)(2) between a parent and nonparent, a court may not award custody to the nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; that the parent contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child." *Id.*; *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, syllabus. Parents who are deemed suitable have a paramount right to custody of their minor children. *Perales* at 97.

**{¶9}** In the instant case the trial court found that the first three factors in the *Perales* unsuitability test were not applicable. The court found that the fourth factor, *i.e.*, that continuing custody with the natural parent would be detrimental to the child, was established by the evidence. The question on appeal is whether the record supports the trial court's conclusion. The record must establish by a preponderance of the evidence that the parent is unsuitable. *Id.* at 98.

**{¶10}** Child custody determinations under R.C. 2151.23(A) are reviewed for abuse of discretion. *In re Keylor*, 7th Dist. No. 04 MO 2, 2005-Ohio-1661, ¶14; *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus. "A child-custody decision that is supported by a substantial amount of competent and credible evidence will not be reversed on appeal absent an abuse of discretion." *Myers v.*

*Myers*, 153 Ohio App.3d 243, 2003-Ohio-3552, 792 N.E.2d 770, ¶43 (7th Dist.). An abuse of discretion constitutes more than an error of judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶11} It is up to the trial court to determine the credibility of witnesses and weigh evidence. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). As to the two specific issues raised in Appellant's objections to the magistrate's decision (whether the child lived with Appellee most of its life, and whether the child had unresolved health issues while in Appellant's care), the trial court simply believed Appellee's evidence and did not believe Appellant's evidence. It appears from the record that Appellee has had de facto custody for most of the child's life. As far as the health issues are concerned, the evidence shows that while appellant had custody there regularly occurred problems with the child being infected with lice. The record also reflects Appellant's failure to obtain proper inoculations for the child.

{¶12} Even if Appellant was correct that there is not enough evidence to support the trial court's findings on these two factual matters, there is ample additional evidence of unsuitability to sustain the trial court's judgment. Appellant was unwilling or unable to care for the child for long periods of time, creating instability in the child's life as the child's care was routinely handed over to others. Appellant has been homeless at various times during the child's life. Although Appellant has been employed at times as a bartender and exotic dancer, she was unemployed at the time of the final hearing and was unemployed for most of the

child's life. She allowed the child to live in a home without electricity or heat (other than heat from a fireplace) for three days during a snowstorm. Appellee's mother described Appellant's living conditions as "[j]ust filth." (Tr., p. 23.) Appellant did not keep the child clean or dressed properly. She engaged in screaming arguments with current or former boyfriends in front of the child. She was involved in relationships with men who were abusive to her. She has had mental health issues. Appellant herself testified that she was not stable enough to care for the child in late 2009 and early 2010. (Tr., p. 118.) Appellee observed the child, who was six years old at the time of final custody hearing, acting out pole-dancing routines and performing sex acts on a doll after being in Appellant's custody. Appellee testified that she thought it was unsafe for the child to be in Appellant's care and custody. Thus, the manifest weight of the evidence supports the trial court's judgment regarding Appellant's unsuitability as a custodian of the child, and there is no abuse of discretion in awarding custody to Appellee, who has, in fact, been caring for the child most of the child's life. Therefore, Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.