[Cite as *In re H.L.S.*, 2019-Ohio-2376.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

IN THE MATTER OF:

H.L.S. AND E.E.S.

---

**O P I N I O N   A N D   J U D G M E N T   E N T R Y**
**Case No. 18 CO 0035**

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio
Case No. C2017-0183 and C2017-0184

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Charles Payne,* Payne Law Office, 617 St. Clair Avenue, P.O. Box 114, East Liverpool, Ohio 43920*, for Appellants and

*Atty. Michael Davis*, Aronson, Fineman & Davis, 124 East Fifth Street, East Liverpool, Ohio 43920, for Appellee.

Dated: June 13, 2019

D'APOLITO, J.

{¶1} Appellants, Annalee and Tammy Muschweck, appeal from the October 9, 2018 judgment of the Columbiana County Court of Common Pleas, Juvenile Division, granting Appellee's, Brian Sayre, motion for custody of his minor daughters, H.L.S. and E.E.S. On appeal, nonparent-Appellants, the Muschwecks, assert the juvenile court abused its discretion in returning custody of the minor children to parent-Appellee, Brian, and in not awarding them reasonable visitation. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} The subject of this case involves the custody of two children: H.L.S., d.o.b. April 22, 2008; and E.E.S., d.o.b. April 6, 2015. Angela Sayre was the natural mother of both children. Angela unfortunately passed away in June 2017. Brian is the natural father of E.E.S. and the adoptive father of H.L.S. Annalee Muschweck is the maternal great-grandmother of the minor children. Tammy Muschweck is the maternal great-aunt. Kathryn Houshour is the maternal grandmother. Ralph Houshour is the maternal step-grandfather. The relationship of the parties in this matter has been described as one of hatred, family dysfunction, and war, including threats, stabbings, and shootings, between three generations of family.

{¶3} Angela was previously married to H.L.S.'s biological father. During that marriage, Angela was the victim of violent domestic abuse by her then husband. H.L.S. witnessed the violent abuse resulting in some degree of emotional or psychological harm. As a result, H.L.S. underwent mental health counseling and treatment. Angela later divorced H.L.S.'s biological father.

{¶4} Angela and Brian began dating in 2011. Brian was a local and regional truck driver as well as a volunteer firefighter with the Knoll Volunteer Fire Department in Knoll, West Virginia. Angela and Brian married in 2015. Their daughter, E.E.S., was born on April 6, 2015. During that marriage, H.L.S. remained in counseling for issues arising

from her witnessing her mother's abuse by her biological father. Angela and Brian participated in H.L.S.'s counseling.

{¶5} Angela and Brian experienced a poor relationship with her family, the Houshours and the Muschwecks, which pre-dated their marriage. A long-standing and hostile relationship between the Houshours and the Muschwecks has existed for many years. The hostility has resulted in serious, critical, and outrageous accusations and threats between the parties. The Houshours' and the Muschwecks' relationships with Angela and Brian have been equally as volatile. As a result, the minor children have witnessed and lived through this family dysfunction over the years.

{¶6} In June 2015, Angela was diagnosed with brain cancer and began treatment. In November 2015, Brian adopted H.L.S. with Angela's support and consent. Angela and Brian separated in February 2017, and later divorced. Angela received temporary custody. She and the minor children eventually moved into the Houshour residence. According to Brian, at that time, "Our world got completely flipped upside down. Everything changed." (7/20/18 Tr. 123).

{¶7} In April 2017, out of this dysfunctional and war-like atmosphere, nine-year-old H.L.S. made graphic and disturbing allegations that Brian had sexually abused her. The exact circumstances of the original disclosure is disputed. Investigations were made by the East Liverpool Police Department ("ELPD") and the Columbiana County Department of Job and Family Services ("CCDJFS"). Brian cooperated in the investigations and denied any wrongdoing.

{¶8} H.L.S. was referred to Akron Children's Hospital, Child Advocacy Center. Courtney Wilson, a licensed social worker, conducted a recorded interview. (Exhibit M-3). H.L.S. appeared to be a happy girl. She talked with Wilson about school and various summer activities while the two colored pictures using crayons. After Wilson mentioned Brian's name, H.L.S. said that he had a "stupid job." H.L.S. alleged that Brian did inappropriate things to her, including touching her "monkey," i.e., vagina. H.L.S., however, had "no idea" whether Brian put his finger inside of her. H.L.S. said that because Brian touched her, he must have touched her younger sister too. H.L.S. stated she had heard that Brian did the same thing to her younger sister. Wilson believed H.L.S. appeared credible. A physical examination was later conducted. The physical exam

revealed no evidence of semen or digital penetration. Thus, no physical evidence of sexual abuse was discovered.

**{¶9}** Gillian Filaccio, a licensed social worker and an abuse and neglect investigator with CCDJFS, also believed H.L.S.'s abuse allegations appeared credible. However, CCDJFS concluded its investigation upon a finding that H.L.S.'s allegations were "unsubstantiated." Filaccio defined "unsubstantiated" as not enough evidence to prove the allegation occurred or that false evidence or allegations were made. CCDJFS sent Brian a letter to this effect and closed their file.

**{¶10}** Despite CCDJFS's finding that the abuse allegations were unsubstantiated, ELPD continued its investigation. Detective Greg Smith interviewed Brian, the Houshours, and the Muschwecks. Detective Smith believed Brian should have been criminally charged. He prepared a grand jury packet and forwarded it to the Columbiana County Prosecutor's Office. However, the Prosecutor's Office declined to present the case to the grand jury or otherwise pursue any charges against Brian.

**{¶11}** Around that time, H.L.S. made new allegations of abuse against Brian that were alleged to have occurred in Pennsylvania and West Virginia. Reports were made to authorities in those jurisdictions as well as to federal authorities. The Muschwecks aggressively pursued charges against Brian.

**{¶12}** Tere Rufener, Court Appointed Special Advocate, conducted an investigation. She expressed concerns that the Muschwecks have been engaged in "forum shopping" in their aggressive pursuit against Brian. During the course of the investigations, H.L.S. kept a notebook containing drawings and descriptions regarding the alleged abuse. Further investigation established, however, that it was actually Tammy Muschweck who wrote the descriptions, not H.L.S. Also, E.E.S. made vague allegations that she too had been inappropriately touched or abused by Brian. However, Rufener reported that E.E.S.'s allegations appear to have been impossible due to close supervision at the time of the alleged abuse.

**{¶13}** Rufener had an opportunity to observe the interactions between Brian and his daughters. Rufener did not observe any interaction that would cause her concern. She recommended that E.E.S. be placed with Brian. Rufener determined that the

allegations made by H.L.S. were untruthful but left the recommendation relating to H.L.S.'s custody in the juvenile court's hands.

**{¶14}** Following another dispute between Angela and her mother, Mrs. Houshour, Angela and her daughters moved into the home shared by the Muschwecks. The minor children continued residing with the Muschwecks, following their mother's death, and developed a close bond with them. H.L.S. expressed her desire to remain in their care. E.E.S. was found to be too young to express an opinion regarding her care.

**{¶15}** On August 8, 2017, the Houshours filed a motion to intervene and complaint for custody. The juvenile court granted their motion to intervene the following week. On September 6, 2017, Brian filed a motion for immediate custody seeking to retain his statutory presumption and right to legal custody of both of his daughters. On October 6, 2017, the Muschwecks filed a motion to intervene and complaint for custody. The juvenile court granted their motion to intervene five days later. On October 20, 2017, Brian filed an answer. Motion practice ensued and pretrials were held. Merit hearings occurred on March 23, March 27, and July 20, 2018.

**{¶16}** On October 9, 2018, the juvenile court, in considering the totality of the circumstances, could not conclude that the sexual abuse allegations against Brian were true by clear and convincing evidence or even by a preponderance of the evidence. The Muschwecks interfered with Brian's ability to enjoy his court-ordered companionship with his daughters. The Houshours and the Muschwecks were determined to exclude Brian from custody of his daughters. The court found that the continued interference, defiance, and hostilities demonstrated by the Houshours and the Muschwecks was contrary to the minor children's best interest. The court denied and dismissed the Houshours' and the Muschwecks' complaints, granted Brian's motion for custody of his daughters, and denied the Houshours and the Muschwecks any contact or companionship with the minor children with the exception of written correspondence subject to Brian's review. The Muschwecks filed a timely appeal and raise two assignments of error.[1]

---

1. The Houshours are not named parties to this appeal.

Case No. 18 CO 0035

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION IN RULING THAT THE LEGAL AND PHYSICAL CUSTODY OF [H.L.S.] AND [E.E.S.] SHALL BE RETURNED TO BRIAN SAYRE AND THE RULING IS UNSUPPORTED BY SUFFICIENT EVIDENCE AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶17}** A juvenile court's determination of legal custody will only be reversed for an abuse of discretion. *In re C.A.C.J.,* 7th Dist. Belmont No. 18 BE 0010, 2018-Ohio-4501, ¶ 7, citing *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 421, 674 N.E.2d 1159 (1997); *In re D.D.D.,* 7th Dist. Jefferson No. 12 JE 7, 2012-Ohio-5254. "An abuse of discretion constitutes more than an error of judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *In re A.S.,* 7th Dist. Jefferson No. 11 JE 29, 2012-Ohio-5468, ¶ 10, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

> A parent's right to raise his or her child is an essential and basic civil right. *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, a parent may lose custody of a child to a non-parent if a court finds the parent unsuitable. *In re Perales,* * * * 52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus [(1977)]. Thus, in child custody proceedings pursuant to R.C. 2151.23(A)(2) between a parent and nonparent, a court may not award custody to the nonparent 'without first determining that a preponderance of the evidence shows that the parent abandoned the child; that the parent contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' *Id.; In re Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, syllabus. Parents who are deemed suitable have a paramount right to custody of their minor children. *Perales* at 97.

*In re A.S., supra,* at ¶ 8.

Case No. 18 CO 0035

**{¶18}** There are three ways a "parent and child relationship" can be established: (1) by natural parenthood; (2) by adoption; or (3) by other legal means in the Revised Code that confer or impose rights, privileges, and duties upon certain individuals. R.C. 3111.01(A); *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 28; *J.M v. A.M.*, 2d Dist. Clark No. 2015-CA-92, 2016-Ohio-1261, ¶ 15.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12 [quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)]. In considering a challenge to the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re A.S.*, [*supra,* at] ¶ 10. In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

*In re C.A.C.J., supra,* at ¶ 20-21.

**{¶19}** This matter involves custody proceedings filed by nonparents, the Muschwecks, against a parent, Brian. As stated, Brian is the natural father of E.E.S. and the adoptive father of H.L.S. Thus, Brian is a parent to both children. As a parent, Brian has the essential and basic civil right to raise his children, absent a finding of unsuitability.

*Hayes, supra,* at 48; *Perales, supra,* at syllabus.  Here, the juvenile court found that all four factors in the *Perales* unsuitability test were not applicable.

{¶20}  As to the first three factors, the Muschwecks presented no evidence during the merit hearings, nor argued in their appellate brief, that Brian abandoned the minor children, contractually relinquished custody of the minor children, or has become totally incapable of supporting or caring for the minor children.  *Perales, supra,* at syllabus.

{¶21}  Regarding the first three factors, the juvenile court stated the following in its October 9, 2018 judgment entry:

> In the case before the Court, [Brian] has not abandoned his minor children.  He has fought to retain his parental rights and has also actively fought to maintain his rights of companionship and contact with the children during the pendency of this case.  [Brian] has not contractually relinquished custody of his minor children to any party including the Houshours or the Muschwecks.  The Court does not find that there has been evidence in this case to prove that Brian Sayre has become totally incapable of supporting or caring for either of his minor children in this case.

(10/9/18 Judgment Entry p.14).

{¶22}  The remaining question on appeal is whether the record supports the juvenile court's conclusion that an award of custody to Brian would not be detrimental to the minor children.

{¶23}  Regarding the fourth factor, the juvenile court further stated in its October 9, 2018 judgment entry:

> The Court does not find, based upon the evidence in this case, that an award of custody to Brian Sayre would be detrimental to the child[ren].  The Court has noted that there are concerns that for some period of time [H.L.S.] may require respite care and continued counseling prior to being reunified into the home of Brian Sayre.  There is no evidence before this Court that Brian Sayre is incapable, refuses or is otherwise unwilling to properly meet the continued needs of the minor children, including [H.L.S.'s] continued

need for counseling and/or potential respite care before she is reunified into his household. During the pendency of this case, the Court has taken a very conservative and cautionary position in allowing both minor children to continue to reside with the Muschwecks during what was initially anticipated to be a brief period for completion of investigations arising from [H.L.S.'s] allegations of abuse. Unfortunately, because of the need for three separate days of testimony and the need to coordinate the schedule of multiple attorneys representing the parties, this case was not able to be resolved more quickly. This Court cannot speculate that Brian Sayre will not adequately provide for the needs, including mental health needs, of his children upon a return of the children to his custody. Mr. Sayre has a history of not only obtaining mental health counseling for [H.L.S.] but participating actively in her counseling for issues unrelated to the current allegations of abuse. The Muschwecks and Houshours have failed in their burden of proof to overcome Brian Sayre's right to legal custody and control of his children, [H.L.S.] and [E.E.S.]

(10/9/18 Judgment Entry p.14-15).

**{¶24}** The juvenile court did not abuse its discretion in determining that an award of custody to Brian would not be detrimental to the minor children. As stated, the Muschwecks' entire case is based solely upon H.L.S.'s allegations that Brian sexually abused her. Neither the Muschwecks nor their witnesses testified to personally witnessing any of the alleged claims of abuse. The Muschwecks also did not present any physical evidence of the alleged abuse.

**{¶25}** In fact, Courtney Wilson, a licensed social worker with Akron Children's Hospital, Child Advocacy Center, concluded that H.L.S.'s physical exam revealed no evidence of semen or digital penetration. Thus, no physical evidence of sexual abuse was discovered. Gillian Filaccio, a licensed social worker and an abuse and neglect investigator with CCDJFS, concluded that H.L.S.'s abuse allegations were "unsubstantiated," i.e., not enough evidence to prove the allegation occurred or that false evidence or allegations were made. Due to the lack of substantial or credible evidence,

the Columbiana County Prosecutor's Office declined to present the case to the grand jury or otherwise pursue any charges against Brian.

**{¶26}** Notwithstanding the foregoing, the Muschwecks' deep hatred toward Brian continued in their aggressive pursuit against him in other jurisdictions. Tere Rufener, Court Appointed Special Advocate, expressed concerns that the Muschwecks were engaged in "forum shopping" and that they wanted to "make dad pay." (7/20/18 Tr. 165). The Muschwecks had improper conversations with the minor children against the advice of professionals.

**{¶27}** The relationship of the parties involved was described as one of hatred, family dysfunction, and war, including threats, stabbings, and shootings, between three generations of family. The Houshours' and the Muschwecks' relationships with Brian has been equally as volatile. As a result, the minor children have unfortunately witnessed and lived through this family dysfunction over the years. The only common ground and determined interest between the Houshours and the Muschwecks was to exclude Brian from regaining custody of his daughters.

**{¶28}** Based on the facts presented, the manifest weight of the evidence supports the juvenile court's judgment regarding Brian's suitability. Thus, the court did not abuse its discretion in determining that an award of custody to Brian would not be detrimental to the minor children.

**{¶29}** The Muschwecks' first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ABUSED ITS DISCRETION IN NOT AWARDING REASONABLE GRANDPARENT VISITATION WITH THE MINOR CHILDREN.**

**{¶30}** Preliminarily, this court notes that the Muschwecks' seven-sentence argument in support of this assignment of error in their appellate brief is mainly a recitation of the facts. The Muschwecks have failed to cite to any legal authority relative to this assignment of error, and thus, have not complied with the requirements under App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the

Case No. 18 CO 0035

contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.") Nevertheless, based on our review of the record and the applicable pertinent law, the juvenile court did not abuse its discretion in declining to grant companionship or visitation with the minor children to the Muschwecks.

**{¶31}** R.C. 3109.11, "Visitation rights of grandparents and other relatives when parent deceased," states in part:

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and *if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child*. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code.

(Emphasis added.)

**{¶32}** The best interest factors the court must consider if relevant are:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child; (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's

residence; (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) The age of the child; (5) The child's adjustment to home, school, and community; (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation; (11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the

basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child; (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (14) Whether either parent has established a residence or is planning to establish a residence outside this state; (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court; (16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

**{¶33}** In its October 9, 2018 judgment entry, the juvenile court stated the following:

The Court now turns to the issue of continued contact or companionship between the Sayre children and the Houshours or the Muschwecks. [The court cited to R.C. 3109.11] The Court notes its prior findings relative to subsection (D) of Revised Code Section 3109.051 and makes the following specific findings. The minor children have had a limited amount of interaction with the Houshours while the children briefly resided with them following Angela Sayre's separation from Brian Sayre. The Court anticipates there had been additional interactions between the children and the Houshours prior to Angela Sayre's death but the evidence is not specific

Case No. 18 CO 0035

as to the nature or extent of that interaction or relationship. There has been a significant amount of interaction between the Sayre children and the Muschwecks. The Muschwecks have had the children residing with them and have provided care for both of the minor children since on or about July 2nd, 2017. While it appears that the Muschwecks have provided for the basic needs of both minor children, the Court has previously noted concerns regarding the conduct of the Muschwecks. The Muschwecks have been rather defiant of the instructions of multiple professionals in this case who advised the Muschwecks to not continue to have conversations with [H.L.S.] regarding her allegations of abuse by her father. Despite these admonitions, the Muschwecks were observed to continue to discuss the allegations with the child or with others in the presence of the child. The Muschwecks have engaged in a pattern of disregard of the Court's instructions and other conduct which were intended to, or had the effect of, interfering with the children's ability to have free and comfortable interaction with the children's father, Brian Sayre, during court-ordered companionship. Furthermore, the Muschwecks have engaged in a pattern of intense pursuit of criminal prosecution of Brian Sayre to an extent that the CASA and Children's Services Investigator deemed contrary to [H.L.S.'s] best interest. [H.L.S.] is currently ten years old and [E.E.S.] is three years old, as of the date of this decision. The evidence would tend to establish that both minor children are reasonably adjusted to their school and their community. The Court has previously noted that it declined to conduct an in camera interview of [H.L.S.] in chambers based upon the Court's finding that the central issue of this case, being [H.L.S.'s] allegations, have been subject to so many interviews and discussions by others that it would not be in [H.L.S.'s] best interest for the Court to engage in further questioning regarding that matter. The Court has previously indicated that it believes it is necessary to preserve [H.L.S.'s] health to separate her from the atmosphere of conflict which exists in the household of the Muschwecks and which also involves the household of the Houshours. The Court believes it is important and

Case No. 18 CO 0035

appropriate to attempt to maintain both of [the] Sayre minor children in the same household. The Court has previously made significant findings regarding the mental health of the minor children and/or the other parties involved in this case. The Court has also previously made specific findings that the Muschwecks have engaged in a course of conduct for the purpose of and resulting in a denial of court ordered companionship between [H.L.S.] and Brian Sayre and, also, to some extent between [E.E.S.] and Brian Sayre. The Muschwecks have specifically demonstrated their defiance of the Court's instructions and orders regarding companionship between the children and their father. The Court does not find that any of the parties in this case have previously been convicted or pleaded guilty to any criminal offense involving any act resulting in a child being an abused child or a neglected child and there has not been sufficient evidence presented in this case that either parent has acted in a manner resulting in either child being an abused or neglected child. None of the parties have expressed a specific intent to establish a residence outside of the State of Ohio. Upon consideration of the evidence in this case as previously stated, the Court finds that it is not in the best interest of [H.L.S.] or [E.E.S.] to continue to have companionship or contact with the Muschwecks or the Houshours. So long as the Muschwecks and the Houshours continue their contact with [H.L.S.] or [E.E.S.], the battle between the parties in this case will continue. The Court specifically finds that continued companionship with the Houshours and the Muschwecks will unreasonably interfere with the children's relationship with Brian Sayre. Therefore, the Court will not make orders granting any companionship or contact between the minor children, [H.L.S.], [E.E.S.], and either the Houshours or the Muschwecks. The Court further finds that it is necessary in this case, based upon the parties' history of defiance, to require neither the Muschwecks nor the Houshours to have any contact with [H.L.S.] or [E.E.S.] directly or indirectly, with the exception of written correspondence which shall be subject to review by Brian Sayre to determine if he believes that the content and communication is

Case No. 18 CO 0035

reasonable and in the best interest of either child. He shall have the right as the father of the children to exclude any communications that he deems detrimental to the children or to delay the children's receipt of those communications.

(10/9/18 Judgment Entry p. 15-18).

**{¶34}** After thoroughly reviewing the record, as previously discussed and addressed, as well as the juvenile court's decision, this court finds that the juvenile court properly applied the pertinent law. The court complied with R.C. 3109.11 by considering each relevant best-interest factor under R.C. 3109.051(D). Accordingly, the juvenile court did not abuse its discretion in declining to grant companionship or visitation with the minor children to the Muschwecks.

**{¶35}** The Muschwecks' second assignment of error is without merit.

## CONCLUSION

**{¶36}** For the foregoing reasons, Appellants' assignments of error are not well-taken. The judgment of the Columbiana County Court of Common Pleas, Juvenile Division, granting Appellee's motion for custody of the minor children is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.

Case No. 18 CO 0035

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**